Vincelette v. Court, 2025 NCBC 38.

STATE OF NORTH CAROLINA

IREDELL COUNTY

AMY VINCELETTE, individually
and derivatively on behalf of
Wellspring Nurse Source, LLC,

        Plaintiff,

v.

KELLY COURT; MELISSA PEIRCE;
and WELLSPRING NURSE
SOURCE, LLC,

        Defendants,

v.

WELLSPRING NURSE SOURCE,
LLC,

        Nominal
        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 1161

**ORDER AND OPINION ON
DEFENDANTS' PARTIAL MOTION TO
DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT**

1. **THIS MATTER** is before the Court upon Defendants Kelly Court, Melissa Peirce, and Wellspring Nurse Source, LLC's Partial Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion"), filed pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)") on 3 January 2025 in the above-captioned case.[1]

2. Having considered the Motion, the parties' briefs in support of and in opposition to the Motion, the Verified First Amended Complaint[2] (the "Amended Complaint"), the arguments of counsel at the hearing on the Motion, and other

---

[1] (Defs.' Partial Mot. Dismiss Pl.'s First Am. Compl. [hereinafter, "Mot."], ECF No. 67.)

[2] (Verified First Am. Compl. [hereinafter, "Am. Compl."], ECF Nos. 53 (redacted), 55 (sealed).)

appropriate matters of record, the Court hereby **GRANTS** in part and **DENIES** in part the Motion.

> *Rayburn Cooper & Durham, P.A., by Ross R. Fulton and Ashley B. Oldfield, for Plaintiff Amy Vincelette.*[3]

> *Allen, Chesson & Grimes PLLC, by David N. Allen, Benjamin S. Chesson, and Elizabeth A. Weisner, and Womble Bond Dickinson (US) LLP, by Patrick G. Spaugh and Emmett J. Whelan, for Defendants Kelly Court and Melissa Peirce and Defendant/Nominal Defendant Wellspring Nurse Source, LLC.*

Brown, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact when ruling on motions to dismiss under Rules 12(b)(1) or 12(b)(6). Rather, the Court recites only those facts that are relevant and necessary to the Court's determination of the Motion. *See, e.g., Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 53, at \*6 (N.C. Super. Ct. Aug. 15, 2019); *Concrete Serv. Corp. v. Invs. Grp., Inc.*, 79 N.C. App. 678, 681 (1986). The following background assumes that the allegations of the Amended Complaint are true. *See, e.g., White v. White*, 296 N.C. 661, 667 (1979) (requiring the trial court to treat a complaint's allegations as true under Rule 12(b)(6)); *Munger v. State*, 202 N.C. App. 404, 410 (2010) ("However, if the trial court confines its evaluation [of a party's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)] to the

---

[3] Plaintiff was initially represented by William M. Butler and Joseph M. Piligian of Moore & Van Allen PLLC ("MVA"). Mr. Butler and MVA were disqualified from representation of Ms. Vincelette in this matter on 8 October 2024. (Order Defs.' Mot. Disqualify Pl.'s Couns., ECF No. 46.)

pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff.").

4. Plaintiff Amy Vincelette ("Ms. Vincelette" or "Plaintiff") and Defendants Melissa Peirce ("Ms. Peirce") and Kelly Court ("Ms. Court") are longtime business partners.[4] In 2001, Ms. Vincelette and Ms. Peirce founded an IT staffing company, Wellspring Group, Inc ("Wellspring Group").[5] Ms. Vincelette and Ms. Peirce were the sole and equal owners of the company.[6]

5. Ms. Vincelette and Ms. Peirce later joined Ms. Court to start Defendant Wellspring Nurse Source, LLC ("Nurse Source"), a healthcare professional staffing business.[7] Nurse Source is a member-managed limited liability company incorporated in Connecticut and headquartered in Iredell County, North Carolina.[8]

6. On 1 January 2019, Ms. Vincelette, Ms. Court, and Ms. Peirce entered into the First Amended and Restated Operating Agreement of Wellspring Nurse Source,

---

[4] (*See generally* Am. Compl. ¶¶ 1–3, *The Wellspring Group, Inc. and Wellspring Nurse Source, LLC. v. Melissa T. Peirce and Jamie M. Peirce*, Iredell County Superior Court 20-CVS-1389 [hereinafter, "Prior Lit."], ECF No. 38.) The Prior Litigation was a mandatory complex business case previously before this Court. The Court may take judicial notice of the Prior Litigation among the parties. *See Stocum v. Oakley*, 185 N.C. App. 56, 61 (2007) ("Trial courts may properly take judicial notice of its own records in any prior or contemporary case when the matter noticed has relevance.") (citation and quotation marks omitted).

[5] (Am. Compl. ¶¶ 5, 9.)

[6] (Prior Lit. Am. Compl. ¶ 5; Index Exs. Pl.'s Br. Opp'n Defs.' Mot. Disqualify Pl.'s Couns., Ex. A [hereinafter, "Vincelette Decl."] ¶ 2, ECF No. 31; *see also* Am. Compl., Ex. D [hereinafter, "Settlement Agreement"], ECF Nos. 53.4 (redacted), 55.1 (sealed).)

[7] (Am. Compl. ¶¶ 1–3, 8.)

[8] (Am. Compl. ¶ 4.)

LLC (the "Operating Agreement").[9]  Pursuant to Schedule A to the Operating Agreement, Ms. Vincelette, Ms. Court, and Ms. Peirce are the sole owners and members of Nurse Source.  At the time the Operating Agreement was signed, and as of at least May 2020, Ms. Vincelette and Ms. Court each held a 33.33% membership and voting interest in Nurse Source while Ms. Peirce held a 33.34% membership and voting interest.[10]  At the time of the current action, the membership composition of Nurse Source is at issue; Ms. Vincelette contends that she remains a member of Nurse Source while Ms. Peirce and Ms. Court contend that she does not.[11]

7.      The current dispute originates from the settlement of the Prior Litigation.[12] In the Prior Litigation, Ms. Vincelette and Ms. Court, acting on behalf of Nurse Source, and Ms. Vincelette, acting on behalf of Wellspring Group, sued Ms. Peirce and her husband Jamie Peirce, who served as Chief Financial Officer of Nurse Source and Wellspring Group until his termination in July 2020.[13]  According to Wellspring Group and Nurse Source, the Peirces "had been engaging in a years-long scheme to defraud and embezzle enormous sums of money from Nurse Source [and Wellspring

---

[9] Despite repeatedly referencing the Operating Agreement throughout the Amended Complaint, Plaintiff did not attach a copy of the Agreement.  Defendants filed the Operating Agreement as Exhibit 1 to their Memorandum of Law in Support of Partial Motion to Dismiss.  (Index of Exs. Defs.' Partial Mot. Dismiss Pl.'s First Am. Compl., Ex. 1 – Operating Agreement of Nurse Source [hereinafter, "Operating Agreement"], ECF No. 69.1.)  Unless otherwise stated or defined, the capitalized terms in this Order and Opinion refer to those terms as used in the Operating Agreement.

[10] (Operating Agreement, Schedule A; *see also* Am. Compl. ¶ 10.)

[11] (*See, e.g.,* Am. Compl. ¶¶ 1, 115.)

[12] (*See also* Am. Compl. ¶ 9; Am. Compl., Ex. D, ECF Nos. 53.4 (redacted), 55.1 (sealed).)

[13] (Am. Compl. ¶¶ 9, 11; *see also* Prior Lit. Am. Compl. ¶ 8.)

Group]."[14] Wellspring Group and Nurse Source asserted that the Peirces were liable for fraud, breach of fiduciary duty, conversion, constructive fraud, unfair and deceptive trade practices, and civil embezzlement due to their alleged improper transfer of various assets and funds of Wellspring Group and Nurse Source to themselves for their personal benefit.[15]

8.      During the Prior Litigation, on 26 June 2020, Ms. Court and Ms. Vincelette voted by two-thirds vote to terminate the Peirces as employees of Wellspring Group and Nurse Source for "Cause" based on their "admitted misappropriation of company funds, gross negligence and willful misconduct."[16]  Pursuant to Section 11.14 of the Operating Agreement,[17] on 23 September 2020, Ms. Vincelette and Ms. Court notified Ms. Peirce that they were exercising their "right and option to purchase all of the Units owned by [Ms. Peirce] at fifty percent (50%) of the Appraised Value determined

---

[14] (Am. Compl. ¶ 14.)

[15] (Am. Compl. ¶¶ 16, 19.)

[16] (Am. Compl. ¶ 20; Am. Compl., Ex. A, ECF No. 53.1.)  Pursuant to Section 5.4 of the Operating Agreement, the termination of a Member's employment for Cause requires a super majority vote of two-thirds of the members.  (Am. Compl. ¶ 182; Operating Agreement § 5.4.)

[17] Section 11.14(a) of the Operating Agreement provides:

> [I]n the event the Company terminates a Member's employment for Cause . . ., then the Company and the Remaining Members shall have the exclusive right and option to purchase all or any portion of the Units owned by such Member at fifty percent (50%) of the Appraised Value determined pursuant to Section 11.16(a) to be payable in accordance with the terms set forth in Section 11.16(b).  Notice of the exercise of the option granted pursuant to this Section 11.14 shall be given to (i) the Member within 90 days of the date on which the . . . Member's employment is terminated by the Company[.]

(Operating Agreement § 11.14(a).)

pursuant to Section 11.16(a)[.]"[18]  Ms. Vincelette and Ms. Court affirmed their termination for Cause of Ms. Peirce and purchase of her Units at a duly called meeting on 12 October 2020 and by written consent on 29 October 2020, stating "Melissa Peirce and Jamie Peirce have misappropriated Company assets for their personal benefit and have grossly mismanaged the assets and finances of the company," and that their conduct was "to the material detriment of the Company."[19]

9.     On 21 January 2022, Wellspring Group, Nurse Source, and the Peirces entered into a Confidential Settlement Agreement and Release (the "Settlement Agreement") of the Prior Litigation.[20]   Among other things, the Settlement Agreement required that, in exchange for payment of the Purchase Price, Ms. Peirce "assign, transfer, convey, and deliver to Nurse Source all Units of Nurse Source that [Ms. Peirce] owns" and "withdraw and resign as a member, officer, employee and agent of Nurse Source."[21]

10.    Though the Settlement Agreement was signed by Ms. Vincelette on behalf of Wellspring Group and Nurse Source, Ms. Court on behalf of Nurse Source, and the Peirces, and the Prior Litigation was voluntarily dismissed by the parties with prejudice pursuant to Paragraph 6 of the Settlement Agreement,[22] Nurse Source

---

[18] (Am. Compl., Ex. B, ECF No. 53.2; *see also* Am. Compl. ¶ 21.)

[19] (Am. Compl. ¶¶ 22–23; Am. Compl., Ex. C, ECF No. 53.3.)

[20] (Am. Compl. ¶ 27.)

[21] (Settlement Agreement ¶ 3(a); Am. Compl. ¶¶ 28–29, 32–33.)

[22] Paragraph 6 of the Settlement Agreement provides:

failed to perform under the Settlement Agreement.[23] In a 20 November 2022 email to Ms. Vincelette, Ms. Court stated she was "pulling the settlement agreement[.]"[24] Consistent with the November 2022 email, in an "Action by Written Consent of the Members" dated 5 June 2023, Ms. Court and Ms. Peirce voted by an alleged two-thirds vote to reinstate Ms. Peirce as a Manager and employee of Nurse Source, "believ[ing Ms. Peirce's reinstatement to be] in the best interests of the Company."[25]

11. Several weeks later, in an "Action by Written Consent of the Members" dated 7 August 2023, Ms. Court and Ms. Peirce also voted by an alleged two-thirds vote to terminate Ms. Vincelette's employment for Cause and to "give notice to Amy Vincelette of their intent to exercise the right and option to purchase all of the Units owned by Ms. Vincelette at 50% of the Appraised Value[.]"[26] Ms. Court and Ms. Peirce sent Ms. Vincelette a check for $140,000 to purportedly purchase Ms. Vincelette's

---

       **DISMISSAL OF THE LITIGATION**. Upon execution of this Agreement, the Parties will file with the Court a "**Joint Stipulation of Dismissal**" . . . dismissing all claims and counterclaims asserted in the Litigation with prejudice.

(Settlement Agreement ¶ 6.) (emphasis in original)

[23] (*See, e.g.*, Am. Compl. ¶¶ 42, 85, 159, 164–65.)

[24] (Am. Compl. ¶ 42.)

[25] (Am. Compl. ¶¶ 78–85; Am. Compl., Ex. M, ECF No. 53.13.)

[26] (Am. Compl. ¶¶ 96–101; Am. Compl., Ex. O, ECF No. 53.15.)

ownership interest pursuant to Section 11 of the Operating Agreement.[27]  Ms. Vincelette rejected and returned the $140,000 check to Ms. Court.[28]

12.   On 17 November 2023, Ms. Vincelette made a written derivative demand on Nurse Source to "enforce, realize, and fulfill Nurse Source's rights and obligations under the Settlement Agreement and to investigate and take suitable action regarding any corporate malfeasance and unlawful conduct by Kelly Court and Melissa Peirce, specifically including their collusive efforts to deprive Nurse Source of its rights under the Settlement Agreement and Amy Vincelette of her rights as a member of Nurse Source."[29]  Nurse Source failed to respond to or take "suitable action" concerning the matters set forth in the derivative demand.[30]

13.   On 16 April 2024, Ms. Vincelette, individually and derivatively on behalf of Nurse Source, filed the complaint initiating the current action.[31]  Ms. Vincelette filed the Verified First Amended Complaint on 27 November 2024, adding individual claims against Nurse Source for breach of the Operating Agreement and against Ms. Court and Ms. Peirce for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing.[32]  In the current action, Ms. Vincelette, suing

---

[27] (Am. Compl. ¶ 103.)

[28] (Am. Compl. ¶ 114.)

[29] (Am. Compl. ¶ 120.)

[30] (Am. Compl. ¶ 122.)

[31] (Verified Compl., ECF Nos. 3 (sealed), 4 (redacted).)

[32] (Am. Compl.)

derivatively on behalf of Nurse Source, asserts claims against Ms. Court and Ms. Peirce for (i) declaratory judgment of "the parties' rights and obligations under the Settlement Agreement and Operating Agreement";[33] (ii) breach of fiduciary duty;[34] (iii) breach of the Settlement Agreement;[35] (iv) injunction/specific performance;[36] and (v) civil conspiracy.[37]  In addition, Ms. Vincelette individually asserts claims for (i) declaratory judgment concerning "the parties' rights and obligations under the Operating Agreement" against Ms. Court and Ms. Peirce;[38] (ii) breach of the Operating Agreement against Ms. Court and Ms. Peirce;[39] (iii) action on account against Nurse Source;[40] (iv) breach of contract against Nurse Source;[41] (v) conversion against Ms. Court and Nurse Source;[42] (vi) unjust enrichment against Nurse Source;[43] (vii) violation of Connecticut General Statute § 34-255i(a) against all

---

[33] (Am. Compl. ¶ 147.)

[34] (Am. Compl. ¶¶ 149–54.)

[35] (Am. Compl. ¶¶ 155–61.)

[36] (Am. Compl. ¶¶ 162–66.)

[37] (Am. Compl. ¶¶ 167–71.)

[38] (Am. Compl. ¶¶ 172–74.)

[39] (Am. Compl. ¶¶ 175–88.)

[40] (Am. Compl. ¶¶ 189–96.)

[41] (Am. Compl. ¶¶ 197–205.)

[42] (Am. Compl. ¶¶ 206–11.)

[43] (Am. Compl. ¶¶ 212–18.)

Defendants;[44] (viii) breach of the Operating Agreement against Nurse Source;[45] (ix) breach of fiduciary duty against Ms. Court and Ms. Peirce;[46] and (x) breach of the implied covenant of good faith and fair dealing against Ms. Court and Ms. Peirce.[47]

14.    Defendants filed the Motion seeking partial dismissal of Ms. Vincelette's Amended Complaint on 3 January 2025.  After full briefing, the Court held a hearing on the Motion on 5 March 2025 (the "Hearing") at which all parties were represented by counsel.  The Motion is now ripe for resolution.

II.

LEGAL STANDARD

15.    "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction[,]" *In re Z.G.J.*, 378 N.C. 500, 504 (2021) (citation omitted), and "must be addressed, and found to exist, before the merits of the case are judicially resolved[,]" *In re T.B.*, 200 N.C. App. 739, 742 (2009) (cleaned up).  "[S]tanding arguments can be presented under both Rule 12(b)(1) and Rule 12(b)(6)[.]" *Finley v. Brown*, 2017 NCBC LEXIS 79, at *8 (N.C. Super. Ct. Sept. 1, 2017) (quoting *Sykes v. Health Network Sols., Inc.*, 2013 NCBC LEXIS 52, at *8 (N.C. Super. Ct. Dec. 5, 2013)).

---

[44] (Am. Compl. ¶¶ 219–24.)

[45] (Am. Compl. ¶¶ 225–38.)

[46] (Am. Compl. ¶¶ 239–43.)

[47] (Am. Compl. ¶¶ 244–50.)

16. "Rule 12(b)(1) requires the dismissal of any action 'based upon a trial court's lack of jurisdiction over the subject matter of the claim.'" *Watson v. Joyner-Watson*, 263 N.C. App. 393, 394 (2018) (quoting N.C. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Harper v. City of Asheville*, 160 N.C. App. 209, 217 (2003). In ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court "may consider matters outside the pleadings" in determining whether subject matter jurisdiction exists, *Harris v. Matthews*, 361 N.C. 265, 271 (2007), and must "view the allegations [of the complaint] as true and the supporting record in the light most favorable to the non-moving party[,]" *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644 (2008).

17. In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider the pleading and "any exhibits attached to the [pleading,]" *Krawiec v. Manly*, 370 N.C. 602, 606 (2018), in order to determine "whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim[,]" *Arroyo v. Scottie's Pro. Window Cleaning, Inc.*, 120 N.C. App. 154, 158 (1995). Additionally, a court may "properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant."[48] *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001); *see also Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007); *Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988); *Haddock v. Volunteers of Am., Inc.*, 2021 NCBC LEXIS 8, at *9 (N.C. Super. Ct. Jan. 22, 2021).

---

[48] It is for this reason that the Court may consider the Operating Agreement filed by Defendants in its determination of this Motion.

18.     Under Rule 12(b)(6), "the trial court is to construe the pleading liberally and in the light most favorable to the plaintiff, taking as true and admitted all well-pleaded factual allegations contained within the [pleading]." *Donovan v. Fiumara*, 114 N.C. App. 524, 526 (1994) (cleaned up); *see also Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (recognizing that, under Rule 12(b)(6), the allegations of the complaint should be viewed as "true and in the light most favorable to the non-moving party") (cleaned up).  The claim is not to be dismissed unless it appears beyond doubt that the non-moving party could prove no set of facts in support of his claim which would entitle him to relief.  *U.S. Bank Nat'l Ass'n v. Pinkney*, 369 N.C. 723, 726 (2017).  The Supreme Court of North Carolina has determined that "dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

## III.

## ANALYSIS

19.     Defendants move the Court to dismiss all of Plaintiff's derivative claims and her seventh individual cause of action for an alleged violation of Connecticut General Statutes § 34-255i(a) pursuant to Rules 12(b)(1) and 12(b)(6).  Defendants additionally move the Court under Rule 12(b)(6) to dismiss Plaintiff's first individual

cause of action for declaratory judgment, fifth individual cause of action for conversion, eighth individual cause of action for breach of the Operating Agreement's indemnification and advancement provisions, and ninth individual cause of action for breach of fiduciary duty. The Court will consider each in turn, beginning with Plaintiff's derivative claims.

## A. <u>Derivative Claims</u>

20. Defendants contend Ms. Vincelette's derivative claims fail on three grounds:

(i) Ms. Vincelette "lacks standing to sue derivatively on Nurse Source's behalf";[49]

(ii) the "derivative claims allege various injuries suffered by [Ms. Vincelette] that do not flow from any harm to Nurse Source";[50] and

(iii) the derivative claims fail on the merits.[51]

**1) Ms. Vincelette adequately pleads standing to sue derivatively on behalf of Nurse Source to survive a motion to dismiss for lack of standing pursuant to Rules 12(b)(1) and 12(b)(6).**

21. N.C.G.S. § 57D-8-06 provides that "[i]n any derivative proceeding in the right of a foreign LLC, the matters covered by [Chapter 57D] will be governed by the law of the jurisdiction of the foreign LLC's organization except for the matters governed by G.S. 57D-8-02 [(Stay of Proceedings)], 57D-8-04 [(Discontinuance or Settlement)], and 57D-8-05 [(Payment of Expenses)]." *See also Husqvarna Pro.*

---

[49] (Defs.' Mem. Law Supp. Partial Mot. Dismiss [hereinafter, "Defs.' Br. Supp."] 10, ECF No. 68.)

[50] (Defs.' Br. Supp. 9.)

[51] (Defs.' Br. Supp. 11.)

*Prods., Inc. v. Robin Autopilot Holdings, LLC*, 2023 NCBC LEXIS 172, at *5 (N.C. Super. Ct. Dec. 22, 2023) (finding that Ohio law governed whether Plaintiff had standing to bring a derivative claim because the company at issue was organized under Ohio law).  As a result, Ms. Vincelette's standing to bring a derivative claim on behalf of Nurse Source is governed by the Connecticut Uniform Limited Liability Company Act (the "Connecticut Act").

22.    The Connecticut Act provides:

> [a] derivative action to enforce a right of a limited liability company may be maintained only by a ***person that is a member at the time the action is commenced and***: (1) ***[w]as a member when the conduct giving rise to the action occurred***; or (2) whose status as a member devolved on the person by operation of law or pursuant to the terms of the operating agreement from a person that was a member at the time of the conduct.

Conn. Gen. Stat. § 34-271b (emphasis added).  Additionally, the Connecticut Act states:

> [a] member may maintain a derivative action to enforce a right of a limited liability company if: (1) ***[t]he member first makes a demand on the other members in a member-managed limited liability company***, . . . requesting that they cause the company to bring an action to enforce the right, ***and the . . . other members do not bring the action within ninety days***; or (2) a demand under subdivision (1) of this section would be futile.

Conn. Gen. Stat. § 34-271a (emphasis added).  Thus, to have standing to sue derivatively on Nurse Source's behalf, Ms. Vincelette must have (1) been a member of Nurse Source on 16 April 2024, the date the current action was commenced; (2) been a member of Nurse Source "when the conduct giving rise to the action occurred"; and (3) made a demand on the other members or asserted demand futility.

23. Defendants seek dismissal of Ms. Vincelette's derivative claims pursuant to Rules 12(b)(1) and 12(b)(6), contending Ms. Vincelette was not a member of Nurse Source when she filed the current action and thus lacks standing to sue derivatively on Nurse Source's behalf.[52] "The evidence is clear," Defendants argue, "that [Ms. Court and Ms. Peirce], as a supermajority of Nurse Source's voting interest, voted to terminate [Ms. Vincelette] as a member on August 7, 2023."[53] Defendants maintain the transfer of Ms. Vincelette's transferable interest in Nurse Source back to the company was completed on 29 November 2023, the date Ms. Court and Ms. Peirce sent Ms. Vincelette "a check reflecting the appraised value under § 11.16 [of the Operating Agreement], along with the appraisal[.]"[54]

24. The Court disagrees. In the Amended Complaint, Ms. Vincelette alleges:

(i) she "is a member of Nurse Source and has been a member of Nurse Source at all times relevant to the facts alleged herein";[55]

(ii) she and Ms. Court voted by two-thirds majority to terminate Ms. Peirce as an employee of Nurse Source for Cause, gave notice to Ms. Peirce that they were exercising the right and option to purchase Ms. Peirce's

---

[52] (Defs.' Br. Supp. 10–11.)

[53] (Defs.' Br. Supp. 10.)

[54] (Defs.' Br. Supp. 11.)

[55] (Am. Compl. ¶ 1.)

Units, and affirmed their termination for Cause of Ms. Peirce and purchase of her Units;[56]

(iii) the "termination for Cause of Melissa Peirce has never been revoked or reversed by a sufficient vote of eligible members of Nurse Source";[57]

(iv) the Settlement Agreement, executed by Ms. Vincelette and Ms. Court on behalf of Nurse Source and by Ms. Peirce on behalf of herself, required Ms. Peirce to assign, transfer, convey, and deliver to Nurse Source all Units of Nurse Source that Ms. Peirce owns;[58]

(v) Ms. Court filed an Interim Notice with the Connecticut Secretary of State stating Ms. Peirce had ceased to be a member of Nurse Source;[59]

(vi) "[a]ccording to [Ms.] Court's repeated and sworn statements that [Ms.] Peirce's membership was terminated according to the Settlement Agreement, [Ms.] Court apparently caused Nurse Source to pay [Ms.] Peirce the Net Purchase Price in accordance with Nurse Source's rights and obligations under the Settlement Agreement. Therefore, [Ms.] Peirce ceased to be a member of Nurse Source";[60] and

---

[56] (Am. Compl. ¶¶ 20–23.)

[57] (Am. Compl. ¶ 24; *see also* Am. Compl. ¶¶ 81–87.)

[58] (Am. Compl. ¶¶ 28, 69–71.)

[59] (Am. Compl. ¶ 73; *see also* Am. Compl., Ex. L, ECF No. 53.12.)

[60] (Am. Compl. ¶ 106.)

(vii)  Ms. Vincelette made a written derivative demand on Nurse Source "to enforce, realize, and fulfill Nurse Source's rights and obligations under the Settlement Agreement and to investigate and take suitable action regarding any corporate malfeasance and unlawful conduct by [Ms. Court and Ms. Peirce]" on 17 November 2023 and "Nurse Source failed to take suitable action concerning the matters set forth in the [demand]."[61]

25.  Construing the above allegations liberally and in the light most favorable to Ms. Vincelette, as is required at the 12(b)(6) stage, the Court finds Ms. Vincelette has pled sufficient facts to withstand a motion to dismiss for lack of standing under Rule 12(b)(6).  Ms. Vincelette has alleged that she is a current member of Nurse Source and that she made a demand on the other Nurse Source members, satisfying the Connecticut Act's requirements to maintain a derivative action.  This Court, "view[ing] the allegations [of the complaint] as true and the supporting record in the light most favorable to the non-moving party[,]" similarly finds that Ms. Vincelette has pled sufficient facts and provided sufficient supporting evidence to withstand a motion to dismiss for lack of standing under Rule 12(b)(1).

**2) Ms. Vincelette adequately alleges a derivative claim for declaratory judgment, however, her claim is partly duplicative of her derivative claim for breach of contract.**

---

[61] (Am. Compl. ¶¶ 120, 122.)

26. Defendants first seek dismissal of Plaintiff's derivative claim for a declaratory judgment. In her first derivative claim, Plaintiff requests a declaratory judgment in Nurse Source's favor declaring that:

(1) Nurse Source has the right and obligation to acquire Melissa Peirce's ownership interest in Nurse Source pursuant to the terms of the Settlement Agreement; (2) Melissa Peirce has the obligation to transfer her ownership interest to Nurse Source pursuant to the terms of the Settlement Agreement; (3) Kelly Court is obligated to cause Nurse Source to acquire Melissa Peirce's ownership interest in Nurse Source pursuant to the terms of the Settlement Agreement; (4) Kelly Court and Melissa Peirce's attempt to 'reinstate' Melissa Peirce was invalid and had no force or effect; and (5) [the Peirces] must reimburse Nurse Source all salaries and benefits that they have received since Melissa Peirce was 'reinstated' and Jamie [Peirce] was reemployed by Nurse Source.[62]

27. Under the Declaratory Judgment Act, "[a]ny person interested under a . . . written contract . . ., or whose rights, status or other legal relations are affected by a . . . contract . . ., may have determined any question of construction or validity arising under the . . . contract . . ., and obtain a declaration of rights, status, or other legal relations thereunder." N.C.G.S. § 1-254. When asserting a claim for declaratory judgment, the claimant "must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties . . . with regard to their respective rights and duties[.]" *Lide v. Mears*, 231 N.C. 111, 118 (1949). A motion to dismiss pursuant to Rule 12(b)(6) is "seldom an appropriate pleading in actions for declaratory judgments, and . . . is allowed only when the record clearly shows that

---

[62] (Am. Compl. ¶ 148.) It is well established under North Carolina law that procedural matters are governed by the law of the forum. This Court's analysis of the claim for declaratory judgment is therefore governed by North Carolina law. *Velleros, Inc. v. Patterson*, 2015 NCBC LEXIS 16, at *20–21 (N.C. Super. Ct. Feb. 23, 2015); *see also Young v. Baltimore & O.R. Co.*, 266 N.C. 458 (1966).

there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439 (1974). However, a court may dismiss a claim for declaratory judgment as duplicative if "all . . . issues concern questions that the Court will have to resolve in addressing the parties' . . . claims for breach of contract[.]" *Innovare, Ltd. v. Sciteck® Diagnostics, Inc.*, 2023 NCBC LEXIS 8, at \*39 (N.C. Super. Ct. Jan. 19, 2023); *see also Stein ex rel. Dogwood Health Tr. v. MH Master Holdings, LLLP*, 2024 NCBC LEXIS 152, at \*15 (N.C. Super. Ct. Dec. 6, 2024) (holding the court has discretion to deny declaratory relief that serves no useful purpose or is duplicative of pending claims).

28. Here, Plaintiff seeks a declaratory judgment that the Settlement Agreement obligated Ms. Peirce to forfeit, and Nurse Source to acquire, her ownership interest in the company. Whether (1) Nurse Source is obligated to acquire Ms. Peirce's ownership interest; (2) Ms. Peirce is obligated to transfer her ownership interest to Nurse Source; and (3) Ms. Court is obligated to cause Nurse Source to acquire Ms. Peirce's ownership interest must necessarily be resolved in the Court's determination of Plaintiff's derivative claim for breach of the Settlement Agreement. The Settlement Agreement provides, in relevant part, that Ms. Peirce "agrees to assign, transfer, convey, and deliver to Nurse Source all Units of Nurse Source that [she] owns [in consideration of the Purchase Price]," "Nurse Source shall pay the Net Purchase Price for [Ms. Peirce's] Units," and Ms. Peirce "agrees to withdraw and

resign as a member, officer, employee and agent of Nurse Source."[63]  Accordingly, the Court **GRANTS** Defendants' Motion to dismiss the first three subparts of Plaintiff's derivative claim for declaratory judgment as this claim is duplicative of Plaintiff's derivative breach of contract claim.

29.    However, whether Ms. Court's and Ms. Peirce's attempt to "reinstate" Ms. Peirce was invalid and whether the Peirces must reimburse Nurse Source all salaries and benefits that they have received since their "reinstatement" will not necessarily need to be decided by the Court's determination of Plaintiff's derivative claim for breach of the Settlement Agreement.  The Settlement Agreement's provisions do not directly address either reinstatement or reimbursement.  Thus, these last two subparts of Plaintiff's claim should be dismissed only if the Amended Complaint "does not allege an actual, genuine existing controversy."  *Fifth Ave. United Methodist Church v. N.C. Conf.*, 911 S.E.2d 106, 121 (N.C. Ct. App. 2024) (quoting *N.C. Consumers Power, Inc.*, 285 N.C. at 439).

30.    In seeking to dismiss Ms. Vincelette's claim for declaratory judgment, Ms. Court and Ms. Peirce argue an "actual, genuine existing controversy" does not exist because a condition precedent to Ms. Peirce's transfer of her membership interest— Nurse Source's purchase of Ms. Peirce's Units or payment of the Net Purchase Price— never occurred and, thus, Ms. Peirce's membership interest was never terminated and Ms. Peirce never lost her voting and managerial rights in Nurse Source.[64]  Ms.

---

[63] (Settlement Agreement § 3.)

[64] (Defs.' Br. Supp. 14.)

Vincelette contends in opposition that Ms. Peirce's membership interest was terminated by (1) Ms. Vincelette and Ms. Court's 26 June 2020 vote to terminate the Peirces' employment for Cause and exercise their right to purchase Ms. Peirce's Units or, alternatively, (2) the 21 January 2022 Settlement Agreement.[65] Under the terms of the Settlement Agreement, Ms. Vincelette states, Nurse Source was to pay the Net Purchase Price for Ms. Peirce's Nurse Source Units by 6 August 2023.[66] Ms. Peirce was never paid the Net Purchase Price, Ms. Vincelette alleges, because Ms. Court "unilaterally declared that she would refuse to allow Nurse Source to perform under the Settlement Agreement" in violation of the Settlement Agreement's terms.[67]

31. The Court concludes that Ms. Vincelette has alleged sufficient facts to permit a reasonable factfinder to find that Ms. Peirce was terminated as a member of Nurse Source and Ms. Peirce's purported reinstatement was invalid as her termination had never been revoked or reversed by a sufficient vote of eligible members. As under Rule 12(b)(6) the issue for determination is only whether there is a concrete, present controversy for the Court to decide, the Court **DENIES** Defendants' Motion as to the remaining two subparts of Plaintiff's derivative claim for declaratory judgment. *Legalzoom.com, Inc. v. N.C. State Bar*, 2012 NCBC LEXIS 49, at *8–9 (N.C. Super. Ct. Aug. 27, 2012).

---

[65] (Am. Compl. ¶¶ 20–34.)

[66] (Am. Compl. ¶¶ 32–34.)

[67] (Am. Compl. ¶ 42.)

**3) Ms. Vincelette adequately alleges injury to Nurse Source to sustain a derivative claim for breach of fiduciary duty.**

32.    In her second derivative cause of action, Ms. Vincelette alleges Ms. Court and Ms. Peirce breached their fiduciary duties owed to Nurse Source by "depriving Nurse Source of its rights and benefits under the Settlement Agreement, 'reinstating' Melissa Peirce, and using Nurse Source funds to pay for their personal attorneys' fees."[68] Defendants seek to dismiss this claim pursuant to Rules 12(b)(1) and 12(b)(6), contending Ms. Vincelette lacks standing because she does not allege any injury to Nurse Source as required to state a derivative claim.[69]

33.    Connecticut law governs Ms. Vincelette's derivative claim for breach of fiduciary duty.[70] It is blackletter law that a derivative claim must be based on injury to the company, not an individual member. *See, e.g.,* Conn. Gen. Stat. § 34-271a (stating when "a member may maintain a derivative action to *enforce a right of a limited liability company*") (emphasis added); *May v. Coffey*, 291 Conn. 106, 115 (2009). Here, Ms. Vincelette alleges "[a]s a direct and proximate result of Defendants' breaches of fiduciary duties, Nurse Source has suffered and will continue to suffer damages[.]"[71] To support her contention, Ms. Vincelette alleges Ms. Peirce "had been

---

[68] (Am. Compl. ¶ 151.)

[69] (Defs.' Br. Supp. 11–13; *see also* Defs.' Reply Supp. Partial Mot. Dismiss [hereinafter, "Defs.' Reply"] 4, ECF No. 78.)

[70] As noted in paragraph 21, *supra*, under N.C.G.S. § 57D-8-06 Ms. Vincelette's standing to bring a derivative claim for breach of fiduciary duty on behalf of Nurse Source is governed by the Connecticut Act.

[71] (Am. Compl. ¶ 153.)

engaging in a years-long scheme to defraud and embezzle enormous sums of money from Nurse Source."[72] More specifically, Ms. Vincelette alleges that Ms. Peirce and her husband's scheme included "improper transfers to the Peirces or for the Peirces' benefit by, among other things, (i) taking unauthorized salaries; (ii) utilizing company credit cards for personal use and pleasure; and (iii) payment for or reimbursement of other personal expenses without authorization."[73] The Peirces furthermore "represented to Nurse Sources' [sic] members that the company lacked financial resources to expand and retain new employees, depriving Nurse Source of business opportunities."[74]

34. Taking these allegations as true, Ms. Vincelette has adequately pled that Nurse Source was directly injured by Defendants' decision to not exercise Nurse Source's rights under the Settlement Agreement. As Ms. Vincelette states, the Settlement Agreement "rids Nurse Source of Ms. Peirce—someone who, while entrusted with control of Nurse Source's finances, . . . 'defraud[ed] and embezzle[d] enormous sums of money from Nurse Source,'" and "depriv[ed] Nurse Source of business opportunities."[75] *See, e.g., Manere v. Collins*, 200 Conn. App. 356, 366–70

---

[72] (Am. Compl. ¶ 14.)

[73] (Am. Compl. ¶ 16.)

[74] (Am. Compl. ¶ 17.)

[75] (Resp. Opp. Defs.' Partial Mot. Dismiss Pl.'s First Am. Compl. [hereinafter, "Pl.'s Resp."] 8–9, ECF No. 73.) The 29 October 2020 Action by Written Consent of the Members signed by Ms. Court and attached to the Complaint additionally recognizes that the Peirces' "misappropriation of Company assets and gross mismanagement have been to the material detriment of the Company." (Am. Compl., Ex. C.)

(2020) (holding that allegations that a member misappropriated company funds and that the company was damaged as a result were sufficient to state a claim for breach of fiduciary duty). Accordingly, the Court finds that Ms. Vincelette adequately pleads injury to Nurse Source and holds these allegations state a viable derivative claim for breach of fiduciary duty. Defendants' Motion seeking to dismiss Plaintiff's second derivative claim pursuant to Rules 12(b)(1) and 12(b)(6) shall therefore be **DENIED**.

**4) Ms. Vincelette adequately alleges a derivative claim for breach of contract as it relates to Ms. Peirce, but not Ms. Court.**

35. Defendants next seek to dismiss Plaintiff's derivative claim for breach of the Settlement Agreement.[76] In her third derivative claim, Ms. Vincelette contends Ms. Peirce "has materially breached the Settlement Agreement by failing to assign, transfer, convey, and deliver to Nurse Source all of her Units."[77] Additionally, Ms. Vincelette alleges Ms. Court "has materially breached the Settlement Agreement by failing and refusing to cause Nurse Source to pay Melissa Peirce the Net Purchase Price."[78]

36. "Unlike claims subject to Rule 9, a claim for breach of contract is not subject to heightened pleading standards[.]" *AYM Techs., LLC. v. Rodgers*, 2018 NCBC LEXIS 14, at *52–53 (N.C. Super. Ct. Feb. 9, 2018). "The elements of a claim for

---

[76] As Section 15 of the Settlement Agreement provides the "Agreement shall be governed by, construed and enforced in accordance with, the laws of the State of North Carolina, without regard to its conflict of law principles," the Court will apply North Carolina law to Plaintiff's derivative claim for breach of contract. (Settlement Agreement § 15.)

[77] (Am. Compl. ¶ 158.)

[78] (Am. Compl. ¶ 159.)

breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). "Thus, in any breach of contract action, the complaint must allege the existence of a contract between the plaintiff and the defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to the plaintiff from such breach." *Howe v. Links Club Condo. Ass'n*, 263 N.C. App. 130, 139 (2018) (cleaned up).

37.    Defendants seek dismissal of Plaintiff's third derivative claim, arguing the claim cannot succeed on the merits because (1) Ms. Court cannot be held liable for any breach that may have occurred as she is not a party to the Settlement Agreement and (2) Ms. Peirce cannot be held liable because Ms. Vincelette "alleges that a condition precedent to [Ms. Peirce's] transfer—Nurse Source's payment of the Net Purchase Price—has not happened."[79]

38.    Defendants are correct that "as a matter of law, a non-party to a contract 'cannot be held liable for any breach that may have occurred.'" *Howe*, 263 N.C. App. at 139 (citing *Canady v. Mann*, 107 N.C. App. 252, 259 (1992)). As only Nurse Source, Wellspring Group, and Melissa and Jamie Peirce are parties to the Settlement Agreement, the Court **GRANTS** Defendants' Motion to dismiss Plaintiff's third derivative claim to the extent it relates to Ms. Court.[80]

---

[79] (Defs.' Br. Supp. 14; *see also* Am. Compl. ¶¶ 107–10.)

[80] Plaintiff attempts to salvage her derivative breach of contract claim against Ms. Court, stating in her response brief that the Complaint "nevertheless sufficiently alleges a claim against Ms. Court for tortious interference with contract." (Pl.'s Resp. 9.) However, this new theory is not alleged in the Complaint and thus will not be considered by the Court. *See Brown v. Secor*, 2017 NCBC LEXIS 65, at *19 (N.C. Super. Ct. July 28, 2017) ("The requirement to liberally construe the complaint is not an invitation to rewrite it.").

39.    Regarding Plaintiff's claim against Ms. Peirce, though Plaintiff alleges in her Amended Complaint that "Kelly Court has failed and refused to cause Nurse Source to pay Melissa Peirce the Net Purchase Price and acquire Melissa Peirce's ownership interest,"[81] she pleads in the alternative that "Kelly Court apparently caused Nurse Source to pay Melissa Peirce the Net Purchase Price in accordance with Nurse Source's rights and obligations under the Settlement Agreement."[82]  "It is well-established that '[l]iberal pleading rules permit pleading in the alternative,' and that theories may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both."  *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419 (citing *Catoe v. Helms Constr. & Concrete Co.*, 91 N.C. App. 492, 498 (1998)).    Furthermore, "[t]here is no requirement that all claims be legally consistent."  *Concrete Serv. Corp.*, 79 N.C. App. at 684.  Thus, the Court **DENIES** Defendants' Motion as to Plaintiff's third derivative claim to the extent it concerns Ms. Peirce's alleged breach of the Settlement Agreement.

**5) Ms. Vincelette's claim for injunction is dismissed as there is no standalone claim for injunctive relief in North Carolina.  However, at this early stage and based on this record, the Court cannot rule out an interpretation of the Settlement Agreement that would support Plaintiff's demand for specific performance.**

40.    In her Amended Complaint, Ms. Vincelette, "as a member and on behalf of Nurse Source, requests an order directing Kelly Court and Melissa Peirce to comply with the terms of the Settlement Agreement and consummate the transactions

---

[81] (Am. Compl. ¶ 107.)

[82] (Am. Compl. ¶ 106.)

required thereunder by (1) causing Nurse Source to pay Melissa Peirce the Net Purchase Price and (2) assigning, transferring, conveying, and delivering to Nurse Source all of the Units of Nurse Source that Melissa Peirce owns."[83]  Defendants argue Plaintiff's claim for injunction and/or specific performance fails "because it is not a claim at all[—][i]t is a requested relief."[84]  Additionally, Defendants contend, Ms. Vincelette's claim for specific performance must be dismissed because (1) she is requesting "this Court to settle a dispute that the Operating Agreement leaves to the members" and (2) she cannot show that Nurse Source is "ready, willing, and able" to perform under the Settlement Agreement.[85]

41.    Defendants are correct with respect to Ms. Vincelette's claim for injunction – it is well-settled that "injunctive relief is not a standalone claim[.]"  *Window World of St. Louis, Inc. v. Window World of Bloomington, Inc.*, 2021 NCBC LEXIS 88, at *15 (N.C. Super. Ct. Oct. 6, 2021).  *See also BIOMILQ, Inc. v. Guiliano*, 2024 NCBC LEXIS 58, at *26 (N.C. Super. Ct. Apr. 19, 2024) (Injunctive relief "is an ancillary remedy, not an independent cause of action.") (citing *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005)); *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *18 (N.C. Super. Ct. July 26, 2018) ("[I]njunctions are remedies, not independent causes of action.").[86]  Since there is no standalone claim for injunctive relief in North

---

[83] (Am. Compl. ¶ 166.)

[84] (Defs.' Br. Supp. 15.)

[85] (Defs.' Br. Supp. 15; *see also* Defs.' Reply 8.)

[86] As the Settlement Agreement is governed by North Carolina law, North Carolina law applies to Plaintiff's claims for injunction/specific performance.  Furthermore, North

Carolina, Defendants' Motion is **GRANTED** with respect to this claim. Plaintiff's claim for injunction is hereby dismissed without prejudice to Plaintiff's ability to seek injunctive relief, if legally and procedurally warranted, or to pursue whatever remedies she may be entitled to by law or equity, which the Court construes to include a request for injunctive relief.

42. Regarding the second aspect of Plaintiff's claim, though Defendants are correct that specific performance is a remedy, the Court, in its discretion and for purposes of judicial efficiency, declines to dismiss this claim or otherwise preclude Plaintiff from requesting the remedy of specific performance at this early stage of the proceedings.

43. "The remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the court." *Munchak Corp. v. Caldwell*, 301 N.C. 689, 694 (1981). "To receive specific performance, the law requires the moving party to prove that (i) the remedy at law is inadequate, (ii) the obligor can perform, and (iii) the obligee has performed [her] obligations." *Reeder v. Carter*, 226 N.C. App. 270, 275 (2013). Generally, "specific performance of a contract is decreed only when it is equitable to do so." *Hutchins v. Honeycutt*, 286 N.C. 314, 318 (1974). "The party claiming the right to specific performance must show the existence of a valid contract, its terms, and either full performance on [her] part or that [she] is ready, willing and able to perform." *Munchak*, 301 N.C. at 694. "Specific

Carolina's traditional conflict of laws rule is that remedial or procedural rights are determined by *lex fori*, the law of the forum. *See, e.g.*, *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 24–25 (2004).

performance will not be decreed unless the terms of the contract are so definite and certain that the acts to be performed can be ascertained and the court can determine whether or not the performance rendered is in accord with the contractual duty assumed." *N.C. Med. Soc'y v. N.C. Bd. of Nursing*, 169 N.C. App. 1, 12 (2005).

44.    Moreover, specific performance is an equitable remedy that "rests in the sound discretion of the trial court and is conclusive on appeal absent a showing of a palpable abuse of discretion." *Diener v. Brown*, 290 N.C. App. 273, 277 (2023) (quoting *Crews v. Crews*, 264 N.C. App. 152, 154 (2019) (quotation marks and citation omitted)). "Because specific performance rests in the Court's discretion, the only role for a jury is to decide any disputed facts." *Durham Coca-Cola Bottling Co. v. Coca-Cola Bottling Co. Consol.*, 2003 NCBC LEXIS 5, at *35 (N.C. Super. Ct. Apr. 28, 2003).

45.    Here, the Settlement Agreement provides that (1) "[i]n consideration of the Purchase Price . . . and the covenants and agreements provided for herein, [Ms. Peirce] hereby agrees to assign, transfer, convey, and deliver to Nurse Source all Units of Nurse Source that [Ms. Peirce] owns";[87] (2) "[Ms. Peirce] further agrees to withdraw and resign as a member, officer, employee and agent of Nurse Source upon the Closing Date";[88] and (3) "Nurse Source *shall* pay the Net Purchase Price for [Ms. Peirce's] Units within 30 days of receipt of the third-party appraiser's valuation[.]"[89]

---

[87] (Settlement Agreement § 3(a).)

[88] (Settlement Agreement § 3(a).)

[89] (Settlement Agreement § 3(d) (emphasis added).) "It is well established that the word 'shall' is generally imperative or mandatory[.]" *Inspection Station No. 31327 v. N.C. DMV*, 244 N.C. App. 416, 425 (2015).

Based on the language of the Settlement Agreement, Plaintiff alleges Nurse Source has the "obligation to acquire all of Melissa Peirce's Units of Nurse Source in exchange for the Net Purchase Price."[90] Defendants, however, maintain that the company had the right to purchase Ms. Peirce's Units but was not obliged to do so.[91]

46. At this early stage of the case, the Court does not resolve the parties' competing legal interpretations over rights or obligations under of the Settlement Agreement. *See Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422 (2001) ("Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties."); *WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 827 (2015) ("[I]nterpretation of an ambiguous contract is best left to the trier of fact."). Furthermore, at the Rule 12(b)(6) stage, the Court must view the allegations of the Amended Complaint "as true and in the light most favorable to the non-moving party." *Sykes*, 372 N.C. at 332. In the Amended Complaint, Ms. Vincelette alleges (1) the "Settlement Agreement is a valid and binding agreement"[92] and (2) "Nurse Source has performed, or stands ready to perform, all material obligations and conditions precedent under the Settlement Agreement."[93] These allegations, taken as true, are sufficient to support a request for specific performance of a contract at the Rule 12(b)(6) stage. Therefore, it is not

---

[90] (Am. Compl. ¶ 164.)

[91] (Defs.' Br. Supp. 15; Defs.' Reply 8.)

[92] (Am. Compl. ¶ 163.)

[93] (Am. Compl. ¶ 157; *see also* Am. Compl. ¶ 103.)

for the Court, at this early stage and based on this record, to rule out an interpretation of the Settlement Agreement that would support Plaintiff's demand for specific performance. Accordingly, the Court **DENIES** Defendants' Motion with respect to specific performance.

**6) Ms. Vincelette adequately alleges a derivative claim for civil conspiracy.**

47. In her derivative claim for civil conspiracy, Ms. Vincelette alleges Ms. Court and Ms. Peirce "agreed between themselves by words and actions known to them to do unlawful acts . . . to deprive Nurse Source of its rights and benefits under the Settlement Agreement."[94] Defendants move to dismiss Ms. Vincelette's claim under Rules 12(b)(1) and 12(b)(6), contending Ms. Vincelette lacks standing and has not alleged injury to Nurse Source. Defendants further contend Ms. Vincelette's "'mere conclusions regarding an alleged agreement' without allegations regarding 'how or when' Kelly and Melissa reached an agreement cannot survive a motion to dismiss."[95] As stated previously, this Court concludes that Ms. Vincelette has adequately pled standing and injury to Nurse Source as a result of Defendants' alleged breach of the Settlement Agreement and alleged breach of fiduciary duty.

48. It is well-established law that "there is not a separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690 (2005).[96]

---

[94] (Am. Compl. ¶ 168.)

[95] (Defs.' Br. Supp. 16–17; Defs.' Reply 8–9.)

[96] North Carolina's traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim. "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Boudreau v. Baughman*, 322 N.C. 331, 335 (1988). Therefore, for the causes of action that

Rather, "civil conspiracy is premised on the underlying act." *Harris*, 361 N.C. at 274 n.2. To plead a claim for civil conspiracy, a plaintiff must allege: "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Krawiec*, 370 N.C. at 614. A conspiracy requires an agreement between at least two persons to take an unlawful action or to take a lawful action in an unlawful manner. *See id.* at 613; *Evans v. Star GMC Sales & Serv., Inc.*, 268 N.C. 544, 546 (1966).

49. Here, Plaintiff's civil conspiracy claim is premised on her derivative claims for breach of contract and breach of fiduciary duty – claims that the Court has found sufficiently pled to withstand a motion to dismiss. According to the Amended Complaint, prior to and during the summer of 2023, Ms. Court and Ms. Peirce conspired to "deprive Nurse Source of its rights and benefits under the Settlement Agreement"[97] and took steps to carry out this conspiracy by refusing to effectuate the Settlement Agreement and by purportedly reinstating Ms. Peirce's employment and terminating Ms. Vincelette's employment.[98] The allegations are not conclusory, as Defendants contend. In the Amended Complaint, Plaintiff alleges the identity of the conspirators, the timeframe and purpose of the conspiracy, the steps taken to carry

are normally considered to be torts, such as civil conspiracy, the law of the state where the plaintiff was injured controls the outcome of the claim. Here, Nurse Source's principal place of business is in Iredell County, North Carolina, and presumably the company was injured in North Carolina. The parties do not dispute that North Carolina law applies to this claim.

[97] (Am. Compl. ¶ 168.)

[98] (Am. Compl. ¶¶ 78–87, 93–105, 109–11, 167–71.)

out the conspiracy, and the resulting injury. Nothing more is required to sustain a claim for civil conspiracy at the Rule 12(b)(6) stage. Therefore, the Court **DENIES** Defendants' Motion to the extent it relates to Plaintiff's derivative claim for civil conspiracy.

**B.    Direct Claims**

50.    Defendants also seek dismissal of Ms. Vincelette's individual claims for declaratory judgment, conversion, violation of Conn. Gen. Stat. § 34-255i(a), breach of the Operating Agreement's indemnification and advancement provisions, and breach of fiduciary duty. The Court will take up each in turn.

**1) Declaratory Judgment**

51.    In Plaintiff's first individual claim, she requests a declaratory judgment in her favor declaring that "(1) Kelly Court and Melissa Peirce's attempt to terminate Amy Vincelette's 'employment' pursuant to Section 11.14(a) [of the Operating Agreement] and deprive her of her interest in Nurse Source is invalid and of no force or effect; (2) Amy Vincelette has never been 'employed' by Nurse Source; (3) there are no grounds to terminate Ms. Vincelette for 'Cause'; and (4) Ms. Peirce cannot legitimately vote on Ms. Vincelette's termination[.]"[99]  Plaintiff's individual claim for declaratory judgment, Defendants contend, is duplicative of her breach of contract claim as "[t]he Court will address whether Nurse Source employed Amy and, if so, properly terminated her on the breach of contract claim."[100]  *See Innovare, Ltd.*, 2023

---

[99] (Am. Compl. ¶ 174.)

[100] (Defs.' Br. Supp. 18.)  In her second individual cause of action for breach of contract, which Defendants do not seek to dismiss at this stage, Ms. Vincelette alleges Ms. Court and Ms.

NCBC LEXIS 8, at *39–40; *see also Stein ex rel. Dogwood Health Tr.,* 2024 NCBC LEXIS 152, at *14–15 (N.C. Super. Ct. Dec. 6, 2024).  Plaintiff, however, maintains that "while there may be some overlap between the [declaratory judgment and breach of contract] claims, the breach of contract [claim] does not necessarily provide all of the relief requested in the declaratory judgment claim."[101]  The Court, Plaintiff states, could find Defendants breached the Operating Agreement "on any one of a number of bases, leaving the remaining issues raised in the declaratory judgement claim undecided."[102]

52.    Plaintiff is correct—the Court need not address each aspect of Plaintiff's declaratory judgment claim in deciding the breach of contract claim.  For instance, the Court could determine that Defendants breached the Operating Agreement because Ms. Peirce was no longer a member and, thus, could not vote on Ms. Vincelette's termination—a ground unrelated to Ms. Vincelette's employment status or whether Ms. Vincelette could be terminated for Cause.  However, in determining Ms. Vincelette's second individual cause of action for breach of contract, the Court must necessarily determine whether Ms. Court's and Ms. Peirce's attempt to terminate Ms. Vincelette's "employment" is invalid as there can be no breach of contract if Defendants' termination of Ms. Vincelette's employment is valid.

---

Peirce breached the Operating Agreement by purportedly terminating Ms. Vincelette's employment for Cause and "exercising their supposed right to purchase Amy Vincelette's ownership interest in Nurse Source at 50% of the appraised value under Section 11.16 of the Operating Agreement."

[101] (Pl.'s Resp. 15–16.)

[102] (Pl.'s Resp. 16.)

Therefore, the Court **GRANTS** Defendants' Motion to dismiss the first subpart of Plaintiff's direct claim for declaratory judgment as this claim is duplicative of Plaintiff's direct claim for breach of contract.

53. Regarding Plaintiff's remaining sub-claims for declaratory judgment, Defendants' motion to dismiss should only be granted if the Amended Complaint "does not allege an actual, genuine existing controversy." *Fifth Ave. United Methodist Church*, 911 S.E.2d at 121 (quoting *N.C. Consumers Power, Inc.*, 285 N.C. at 439). Ms. Vincelette's Amended Complaint alleges an actual, existing controversy. Specifically, Ms. Vincelette alleges the parties have irreconcilable views regarding Ms. Vincelette's employment status with Nurse Source, whether Ms. Vincelette could be terminated for Cause, and whether Ms. Peirce can legitimately vote on Ms. Vincelette's termination.[103] Ms. Vincelette contends (1) she "had never been a paid employee of Nurse Source";[104] (2) "there were no grounds whatsoever to terminate Amy Vincelette for Cause even if she had been a paid employee";[105] and (3) "Melissa Peirce could not legitimately vote on Amy Vincelette's termination or any other matter related to Nurse Source when she had already been terminated for Cause herself[.]"[106]

---

[103] (Am. Compl. ¶ 173.)

[104] (Am. Compl. ¶ 113.)

[105] (Am. Compl. ¶ 113.)

[106] (Am. Compl. ¶ 113.)

54. Defendants take the opposite view and contend (1) Ms. Vincelette was an employee;[107] (2) her employment could be terminated "for Cause . . . due to her gross negligence and willful misconduct in the performance of her duties to the material detriment of the Company";[108] and (3) Ms. Peirce was reinstated as a member on 5 June 2023 and was a current member of Nurse Source on 7 August 2023, the date of Ms. Vincelette's "termination."[109]   Since under Rule 12(b)(6) the issue for determination is only whether there is a concrete, present controversy for the Court to decide—not "whether the plaintiff in a declaratory judgment action is ultimately entitled to the declaration it seeks"—the Court **DENIES** Defendants' Motion as to the remaining three subparts of Plaintiff's individual claim for declaratory judgment. *Legalzoom.com, Inc.*, 2012 NCBC LEXIS 49, at *8–9.

**2) Conversion[110]**

55. Under North Carolina law, conversion is defined as: "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Estate of Graham v. Morrison*, 168 N.C. App. 63, 72 (2005). "At its core, conversion 'is not

---

[107] (*See* Am. Compl., Ex. O.)

[108] (Am. Compl., Ex. O.)

[109] (*See* Am. Compl., Exs. M, O.)

[110] "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Boudreau*, 322 N.C. at 335. Therefore, the law of the state where Ms. Vincelette was injured governs her conversion claim. Here, Ms. Vincelette is a resident of North Carolina and alleges injuries in North Carolina. The parties do not dispute that North Carolina law applies.

the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner....'" *Tai Sports, Inc. v. Hall*, 2012 NCBC 62, ¶ 109 (N.C. Super. Ct. Dec. 28, 2012). The North Carolina Court of Appeals has held that there are "two essential elements [that] are necessary in a complaint for conversion—there must be ownership in the plaintiff and a wrongful conversion by the defendant." *Lake Mary L.P. v. Johnston*, 145 N.C. App. 525, 532 (2001). The conversion of money additionally requires that the funds converted be specifically traced and identified. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528 (2012). This tracing does not require tracing of actual currency, but that "funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at 529.

56.  In her claim for conversion against Ms. Court and Nurse Source, Ms. Vincelette alleges "Kelly Court has caused Nurse Source to obtain and take Wellspring Group's funds without authorization or consent by Amy Vincelette or Wellspring Group . . . thereby injuring Amy Vincelette in the amount of the improperly and impermissibly obtained funds, plus interest."[111]  Specifically, Ms. Vincelette alleges:

(i)     "from December 8, 2022, through February 24, 2023, a Nurse Source employee with access to Wellspring Group's bank accounts caused Wellspring Group to transfer $275,000 of its funds to Nurse Source";[112]

---

[111] (Am. Compl. ¶¶ 207–08.) Ms. Vincelette and Ms. Peirce were the sole owners of Wellspring Group, with each owning a 50% share.

[112] (Am. Compl. ¶ 126.)

(ii)   "of the $275,000 of funds transferred, Amy Vincelette, as the sole owner of Wellspring Group, approved only $170,000 to be transferred";[113]

(iii)  "Kelly Court directed a Nurse Source employee with access to Wellspring Group's bank accounts to transfer the remaining $105,000 from Wellspring Group to Nurse Source knowing that Amy Vincelette did not approve or consent to such transfers";[114]

(iv)   "Wellspring Group held a business line of credit with Wells Fargo for which a credit card tied to Wellspring Group's FEIN was issued" and "[t]his line of credit was personally guaranteed by Amy Vincelette";[115]

(v)    "Kelly Court or Melissa Peirce, without Amy Vincelette's knowledge or authorization, took cash advances [from the business line of credit] for the benefit of Nurse Source";[116] and

(vi)   "[a]lthough Nurse Source acknowledged that it had taken the cash advances, it failed and refused to make full and immediate payment of the outstanding balance [to Amy Vincelette]."[117]

---

[113] (Am. Compl. ¶ 128.)

[114] (Am. Compl. ¶ 129.)

[115] (Am. Compl. ¶ 141.)

[116] (Am. Compl. ¶ 143.)

[117] (Am. Compl. ¶ 145.)

Ms. Vincelette states her conversion claim is based on (1) the $105,000 in unauthorized transfers made from Wellspring Group's bank account[118] and (2) the unauthorized cash advances taken on Wellspring Group's business line of credit.[119]

57. Defendants contend Ms. Vincelette's claim for conversion cannot withstand a motion to dismiss because (1) "we do not allow personal claims to be assigned in North Carolina";[120] (2) the conversion claim is barred by the economic loss rule;[121] and (3) Ms. Court allegedly "'caused Nurse Source' to convert the funds" and "[c]ausing another to convert funds is not a standalone claim North Carolina recognizes."[122]

58. As a preliminary matter, Ms. Vincelette has adequately pled a prima facie case for conversion. In the Amended Complaint she alleges (1) Kelly Court directed a Nurse Source employee make an unauthorized transfer of $105,000 from Wellspring Group to Nurse Source and (2) Ms. Court or Ms. Peirce took unauthorized cash advances from Wellspring Group's business line of credit for the benefit of Nurse Source. These allegations are sufficient to sustain a claim for conversion at the Rule 12(b)(6) stage.

---

[118] (Pl.'s Resp. 17; Am. Compl. ¶¶ 129–30.)

[119] (Pl.'s Resp. 17; Am. Compl. ¶¶ 141–44.)

[120] (Defs.' Br. Supp. 18.) Ms. Vincelette alleges she received her claim for conversion through an assignment from Wellspring Group.

[121] (Defs.' Br. Supp. 19.)

[122] (Defs.' Br. Supp. 19–20.)

59.    Regarding Defendants' first argument for dismissal, North Carolina courts have held that assignment of a tort claim involving economic loss to a company, as opposed to physical injury to a person, does not violate North Carolina's public policy prohibiting champerty. *See, e.g., Lau v. Constable*, 2022 NCBC LEXIS 75, at *13–19 (N.C. Super. Ct. July 11, 2022); *J&B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 10 (1987). Thus, as Ms. Vincelette's conversion claim concerns economic loss to Wellspring Group, this Court holds Wellspring Group's conversion claim can be assigned to Ms. Vincelette.

60.    In relation to Defendants' second argument, "[t]he economic loss rule, as it has developed in North Carolina, generally bars recovery in tort for damages arising out of a breach of contract[.]" *Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 159 (2017). The rule "denote[s] limitations on the recovery in tort when a contract exists between the parties that defines the standard of conduct and which the courts believe should set the measure of recovery." *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *47–48 (N.C. Super. Ct. Nov. 3, 2011). This Court has recognized that "[w]hen one party to a contract claims that another party to the contract has wrongfully taken possession of property that is the subject of the contract, the appropriate claim is for breach of contract, not conversion." *Howard v. IOMAXIS, LLC*, 2023 NCBC LEXIS 159, at *32 (N.C. Super. Ct. Nov. 29, 2023). However, this Court has also held that the economic loss rule does not apply where the plaintiff "identif[ies] a duty separate and distinct from [the] contractual obligations."

*Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *8 (N.C. Super. Ct. Jan. 5, 2016).

61. Here, although Ms. Vincelette concedes that Wellspring Group agreed to lend funds to Nurse Source, she also alleges that Wellspring Group only agreed to lend $170,000 to Nurse Source and did not authorize any cash advances to Nurse Source from Wellspring Group's business line of credit. Thus, Nurse Source's duty to repay the additional $105,000 and any unauthorized cash advances would be a "duty separate and distinct from [the] contractual obligations." *Forest2Market, Inc.*, 2016 NCBC LEXIS 3, at *8. Furthermore, no contract addressing the transfer or loaning of funds between Wellspring Group and Nurse Source is attached to the Amended Complaint. At this stage, the Court is unable to resolve the parties' competing arguments regarding the extent to which the allegations supporting Ms. Vincelette's conversion claim are–or are not–fully capable of being redressed through a breach of contract claim.

62. Lastly, in relation to Defendants' third argument, North Carolina courts have held that "[i]t is well settled that an individual member of a limited liability company or an officer of a corporation may be individually liable for his or her own torts." *White v. Collins Bldg., Inc.*, 209 N.C. App. 48, 51 (2011); *see also Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518 (1990) (an officer of a corporation "can be held personally liable for torts in which he actively participates[,]" even though "committed when acting officially"); *Strang v. Hollowell*, 97 N.C. App. 316, 318 (1990) ("It is well settled that one is personally liable for all torts committed by him . . .

notwithstanding that he may have acted as agent for another or as an officer for a corporation."); *Esteel Co. v. Goodman*, 82 N.C. App. 692 (1986) (an officer of a corporation who commits a tort is individually liable for that tort, even though acting on behalf of the corporation in committing the act). Here, Ms. Vincelette alleges Ms. Court directed the unauthorized transfer of $105,000 from Wellspring Group to Nurse Source and took unauthorized cash advances from Wellspring Group's business line of credit for the benefit of Nurse Source. Under North Carolina law, these allegations are sufficient to hold Ms. Court individually liable for conversion and withstand a motion to dismiss.

63. Based on the above, the Court **DENIES** Defendants' Motion to dismiss Plaintiff's individual claim for conversion against Nurse Source and Ms. Court.

### 3) Violation of Conn. Gen. Stat. § 34-255i(a)[123]

64. Conn. Gen. Stat. § 34-255i(a) provides in pertinent part:

> In a member-managed limited liability company, the following rules apply:
>
> (1) On reasonable notice, a member may inspect and copy during regular business hours, at a reasonable location specified by the company, any record maintained by the company regarding the company's

---

[123] The internal affairs doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs–matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders–because otherwise a corporation could be faced with conflicting demands." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). Courts normally look to the state of a business's incorporation for the relevant law. The right to inspect books and records is a matter peculiar to a corporation's internal affairs, and Nurse Source is incorporated under the laws of Connecticut. Thus, pursuant to the internal affairs doctrine, the provisions of the Connecticut Uniform Limited Liability Company Act apply to this claim. The parties do not dispute Connecticut law is applicable here.

activities, affairs, financial condition and other circumstances to the extent the information is material to the member's rights and duties under the operating agreement or sections 34-243 to 34-283d, inclusive.

(2) The company shall furnish to each member: . . . (B) on demand, any other information concerning the company's activities, affairs, financial condition and other circumstances, except to the extent the demand or information demanded is unreasonable or otherwise improper under the circumstances.

(3) The duty to furnish information under subdivision (2) of this subsection also applies to each member to the extent the member knows any of the information described in said subdivision.

65. Ms. Vincelette alleges, pursuant to Conn. Gen. Stat. § 34-255i(a), she requested that "Nurse Source, Kelly Court, and Melissa Peirce furnish to Amy Vincelette and make available for inspecting and copying, all of the books and records concerning Nurse Source's operations, activities, affairs, financial condition, and other circumstances since January 1, 2021[.]"[124] Despite her demand, Ms. Vincelette states that Ms. Court and Ms. Peirce "failed and refused to furnish or make available for inspection and copying all of the information which Amy Vincelette requested and is entitled to receive."[125] As a result, Ms. Vincelette contends she is entitled to an order requiring Nurse Source, Ms. Court, and Ms. Peirce to furnish and make available for inspection and copying the documents she requested.[126] Defendants

---

[124] (Compl. ¶ 221.)

[125] (Compl. ¶ 223.)

[126] (Compl. ¶ 224.)

maintain Ms. Vincelette had no right to information under Conn. Gen. Stat. § 34-255i(a) because she "was no longer a member at the time of her requests."[127]

66.    As stated previously, this Court concludes that Ms. Vincelette has adequately pled sufficient facts and provided sufficient supporting materials to permit a finding that she remains a member of Nurse Source and, thus, has standing to bring a claim under Conn. Gen. Stat. § 34-255i(a).[128] The Court therefore **DENIES** Defendants' Motion to dismiss this claim pursuant to Rules 12(b)(1) and 12(b)(6).

**4) Breach of Operating Agreement–Indemnification and Advancement[129]**

67.    Defendants next seek dismissal of Ms. Vincelette's claim for breach of the Operating Agreement's indemnification and advancement provisions.  Section 9.3 of the Operating Agreement provides:

> Indemnification.  To the fullest extent permitted by applicable law, the Company shall indemnify any Member for any loss, damage or claim incurred by such Member *by reason of any act or omission performed or omitted by such Member in good faith on behalf of the Company* and in a manner reasonably believed to be within the scope of authority conferred on such Member by this Agreement.[130]

Section 9.4 of the Operating Agreement relatedly provides:

> Expenses.   To the fullest extent permitted by applicable law, the expenses (including legal fees) incurred by any Member in *defending*

---

[127] (Defs.' Br. Supp. 20.)

[128] (*See supra* ¶¶ 21–25 and accompanying notes.)

[129] Section 14.6 of the Operating Agreement provides "[t]his Agreement and the rights and obligations of the parties hereunder shall be interpreted in accordance with the laws of the State of Connecticut, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws."  Thus, Connecticut law governs this claim.

[130] (Operating Agreement § 9.3 (emphasis added).)

***any claim, demand, action, suit or proceeding*** shall be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding including claims, demands, actions, suits or proceedings with respect to which such Member is alleged to have not met the applicable standard of conduct or is alleged to have committed conduct so that, if true, such Member would not be entitled to indemnification under this Agreement, upon receipt by the Company of an undertaking by or on behalf of such Member to repay such amount if it shall be determined that such Member is not entitled to be indemnified as authorized in Section 9.3 hereof.[131]

68. Ms. Vincelette alleges Defendant Nurse Source breached the Operating Agreement by: (1) failing to indemnify her as demanded in her 30 October 2024 Notice of Demand for Indemnification and Advancement; and (2) refusing to advance her litigation expenses.[132] Specifically, Ms. Vincelette alleges that Nurse Source "has failed and refused to advance litigation expenses, including attorney's fees, incurred by Amy Vincelette in her defense of the claims and actions made or taken against her by Kelly Court and Melissa Peirce in their unlawful attempt to terminate Amy Vincelette's 'employment' and deprive her of her interest in Nurse Source."[133]

69. Defendants contend Ms. Vincelette is not entitled to advancement under the terms of the Operating Agreement because Ms. Vincelette "is not defending any claims; she is prosecuting them."[134] Similarly, Defendants contend Ms. Vincelette is not entitled to indemnification because Ms. Vincelette's "alleged 'losses' or 'damages'

---

[131] (Operating Agreement § 9.4 (emphasis added).)

[132] (Am. Compl. ¶ 236.)

[133] (Am. Compl. ¶ 236.)

[134] (Defs.' Br. Supp. 21.)

are her self-inflicted 'litigation expenses, including attorney's fees' to sue Nurse Source."

70.    As noted previously, to state a claim for breach of contract under Connecticut law, a plaintiff must allege "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *CCT Communications, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017). Dismissal of a claim for breach of contract is appropriate if it appears beyond doubt that the non-moving party could prove no set of facts in support of her claim which would entitle her to relief. *See, e.g., U.S. Bank Nat'l Ass'n*, 369 N.C. at 726.

71.    Here, Ms. Vincelette alleges sufficient facts to plead a *prima facie* case for breach of contract and to withstand a motion to dismiss at the 12(b)(6) stage. She alleges that (1) the Operating Agreement is a "valid and enforceable contract by and between, without limitation, Nurse Source and [herself]",[135] (2) she incurred expenses in defending a "claim, demand, action, suit or proceeding",[136] (3) Sections 9.3 and 9.4 of the Operating Agreement provide that she should be indemnified for or receive advancement of expenses to cover such costs,[137] (4) Nurse Source failed or refused to indemnify her or advance her litigation expenses,[138] and (5) she suffered damages.[139]

---

[135] (Am. Compl. ¶ 226.)

[136] (Am. Compl. ¶ 231.)

[137] (Am. Compl. ¶¶ 227–35.)

[138] (Am. Compl. ¶ 236.)

[139] (Am. Compl. ¶ 238.)

Furthermore, at this stage in the proceedings, it does not appear beyond doubt that Ms. Vincelette could prove no set of facts in support of her claim which would entitle her to relief. Therefore, the Court **DENIES** Defendants' Motion to dismiss this claim pursuant to Rule 12(b)(6).

**5) Breach of Fiduciary Duty**[140]

72.   Defendants lastly seek dismissal of Ms. Vincelette's claim for breach of fiduciary duty in which Ms. Vincelette alleges Ms. Court and Ms. Peirce have breached their fiduciary duties to her.[141]

73.   "The elements which must be proved to support a conclusion of breach of fiduciary duty are: '(1) that a fiduciary relationship existed which gave rise to . . . a duty of loyalty . . . an obligation . . . to act in the best interests of the plaintiff, and . . . an obligation . . . to act in good faith in any matter relating to the plaintiff; (2) that the defendant advanced his or her own interests to the detriment of the plaintiff; (3) that the plaintiff sustained damages; and (4) that the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." *Chioffi v. Martin*, 181 Conn. App. 111, 138 (2018) (cleaned up). Conn. Gen. Stat. § 34-255h provides "[a] member of a member-managed limited liability company *owes to the company and*, subject to subsection (b) of section 34-271, *the other members the duties of loyalty and*

---

[140] Pursuant to the internal affairs doctrine, which North Carolina recognizes, only the state of organization can exercise authority to regulate matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. Thus, Connecticut law applies to Plaintiff's breach of fiduciary duty claim. The parties do not dispute Connecticut law applies.

[141] (Am. Compl. ¶¶ 239–43.)

*care* set forth in subsections (b) and (c) of this section." Section 34-271(a) relatedly states "a member may maintain a direct action against another member . . . to enforce the member's rights and otherwise protect the member's interests." However, pursuant to 34-271(b), "[a] member maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." Defendants contend the Court should dismiss Ms. Vincelette's individual claim for breach of fiduciary duty because she fails to allege a personal injury as required by Section 34-271(b) and, relatedly, the "damages" element necessary to sustain a claim for breach of fiduciary duty.[142]

74.     The Court finds Ms. Vincelette adequately pled personal injury in her Complaint to survive a motion to dismiss. Ms. Vincelette alleges Ms. Court and Ms. Peirce "manufactured reasons to support terminating Ms. Vincelette's 'employment'" and "otherwise sought to wrongfully deprive Ms. Vincelette of her rights and interests as a member of Nurse Source."[143] Viewing these allegations as true and in a light most favorable to Plaintiff, as required at the 12(b)(6) stage, these allegations permit a reasonable factfinder to conclude that Defendants breached their duty of loyalty to Ms. Vincelette, she suffered personal injury as a result, and that her injury, if proven, "is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." *See, e.g., Wallace v. HHFC Healthcare Advisors, LLC,*

---

[142] (Defs.' Br. Supp. 22; Defs.' Reply 13–14.)

[143] (Pl.'s Resp. 24; Am. Compl. ¶¶ 35–41, 50–51, 100–01, 112–16.)

2024 Conn. Super. LEXIS 1099, at \*24–26 (Conn. Super. Ct. May 31, 2024) (finding that allegations that defendants had wrongfully denied plaintiff his equity in various companies were sufficient to support a direct claim for breach of fiduciary duty). Similarly, Ms. Vincelette's allegations that Ms. Court and Ms. Peirce have "failed and refused to provide [her] books, records, and information to which she is entitled pursuant to the Operating Agreement and Conn. Gen. Stat. § 3[4]-255i(a)" are sufficient to permit a reasonable factfinder to conclude that Defendants breached their duty of loyalty to Ms. Vincelette and that Ms. Vincelette suffered personal injury.[144] *See, e.g., Bohn v. Dorothea L. Denton, LLC*, 2021 Conn. Super. LEXIS 1436, at \*73–74 (Conn. Super. Ct. Sept. 3, 2021). Defendant's Motion seeking to dismiss Plaintiff's individual breach of fiduciary duty claim shall therefore be **DENIED**.

IV.

CONCLUSION

75. **WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as follows:

a. Defendants' Motion is **GRANTED** with respect to Plaintiff's derivative claim for declaratory judgment that "(1) Nurse Source has the right and obligation to acquire Melissa Peirce's ownership interest in Nurse Source pursuant to the terms of the Settlement Agreement; (2) Melissa Peirce has the obligation to transfer her ownership interest to Nurse Source pursuant to the terms of the Settlement Agreement; [and] (3)

---

[144] (Am. Compl. ¶¶ 48, 117, 220–24.)

Kelly Court is obligated to cause Nurse Source to acquire Melissa Peirce's ownership interest in Nurse Source pursuant to the terms of the Settlement Agreement," and Plaintiff's claim is hereby **DISMISSED with prejudice** to this extent.

b. Defendants' Motion is **GRANTED** with respect to Plaintiff's derivative claim for breach of contract as it relates to Ms. Court, and Plaintiff's claim is hereby **DISMISSED with prejudice** to this extent.

c. Defendants' Motion is **GRANTED** with respect to Plaintiff's derivative claim for injunctive relief, and Plaintiff's claim is hereby **DISMISSED without prejudice**.

d. Defendants' Motion is **GRANTED** with respect to Plaintiff's individual claim for declaratory judgment that "Kelly Court and Melissa Peirce's attempt to terminate Amy Vincelette's 'employment' pursuant to Section 11.14(a) and deprive her of her interest in Nurse Source is invalid and of no force or effect," and Plaintiff's claim is hereby **DISMISSED with prejudice** to this extent.

e. Defendants' Motion is **DENIED** as to the remaining subparts of Plaintiff's derivative claim for declaratory judgment.

f. Defendants' Motion is **DENIED** as to Plaintiff's derivative claims for breach of fiduciary duty, specific performance, and civil conspiracy.

g. Defendants' Motion is **DENIED** as to Plaintiff's derivative claim for breach of contract as it relates to Ms. Peirce.

h. Defendants' Motion is **DENIED** as to Plaintiff's individual claims for conversion, violation of Conn. Gen. Stat. § 34-255i(a), breach of fiduciary duty, and breach of operating agreement–indemnification and advancement.

i. Defendants' Motion is **DENIED** as to Plaintiff's remaining individual claims for declaratory judgment.

j. Defendant's Motion is otherwise **DENIED**.

**SO ORDERED**, this the 30th day of July, 2025.

/s/ A. Todd Brown
A. Todd Brown
Special Superior Court Judge
 for Complex Business Cases